IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MARK KEENAN FELKER and AMANDA BURGESS FELKER, *Plaintiffs*, v. TYSON FOODS, INC., *et al.*, *Defendants.* | CIVIL ACTION NO. 5:16-cv-00187-TES |

### ORDER GRANTING DEFENDANT TYSON FOODS, INC.'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Mr. and Mrs. Felker brought the instant premises liability and loss of consortium suit against Defendant Tyson Foods, Inc. ("Tyson"), and Tyson moved for summary judgment [Doc. 44]. For the reasons stated herein, Tyson's motion is **GRANTED**.

### FACTUAL BACKGROUND

The following facts are undisputed.[1] In 2015, Tyson hired Primus, a general contractor, to design and construct new buildings in a large-scale renovation of its

---

[1] Defendant submitted a statement of material facts in support of its Motion for Summary Judgment. Plaintiffs filed no response to the statement of material facts, and those facts are therefore deemed admitted. *See* LR 56, MDGa ("The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried. . . . All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate.").

Vienna, Georgia facility. [Doc. 44-2, ¶¶ 10, 11]. The purpose of the renovation was to equip the Vienna facility with the space and machinery necessary to produce new product lines for grocery stores. [*Id.* at ¶ 10]. Primus, in turn, hired former-Defendant Buzzell Plumbing, Heating and A/C[2] to install heating and air units and ducts throughout the facility. [*Id.* at ¶ 12]. In compliance with base industry standards, Buzzell installed air ducts using 22-gauge metal straps fastened to the facility roof purlings. [*Id.* at ¶¶ 17, 18]. Although Tyson authorizes the use of base industry standard materials in its HVAC units, it ordinarily uses specifications above the industry standard in "[j]ust about every trade" in order to "protect [their] people" and to maximize the useful lives of its facilities. [Doc. 44-5, Mefford Depo., pp. 36:24–37:3, 27:18-21, 28:3-18].

As part of the renovation process, Tyson hired ProLectric Industrial Contractors, Inc. ("ProLectric") to complete the electrical work needed for the renovation of the Vienna facility. [Doc. 44-2, ¶¶ 9, 10]. On May 20, 2015, Plaintiff Mark Felker was working as an electrician for ProLectric and completing an electrical job in Tyson's Vienna facility in furtherance of the renovation. [*Id.* at ¶¶ 1, 2, 8]. Mr. Felker had been an electrician for 12 years and worked primarily on jobs at Tyson facilities. [*Id.* at ¶ 3]. That day, Mr. Felker was tasked with installing conduit and reached his assigned work area by climbing a ladder, "finagling" his way onto a heating and air duct suspended 12 feet in the air, and

---

[2] Plaintiffs initially sued both Tyson and Buzzell, both of whom moved for summary judgment on Plaintiffs' claims. Because Plaintiffs did not contest Buzzell's motion, the Court granted the motion and dismissed the claims against Buzzell [Doc. 54]. Tyson is the only remaining Defendant.

lying on his back on top of the duct. [*Id.* at ¶¶ 2, 4]. He testified that he secured himself to the ceiling with a 17-foot safety harness provided by his employer, ProLectric. [Doc. 44-4, M. Felker Depo., pp. 41:2–42:12]. He also testified that he mistakenly assumed the air duct was held up by a rod similar to the one to which he hooked himself. [*Id.* at ¶ 14; Doc. 44-4, pp. 69:13–70:7].

On the day in question, Donald Mefford, Tyson's senior managing engineer, testified that he regularly walked around the facility and inspected work being done, but he never saw any electricians using the duct work to assist them in completing their tasks. [Doc. 44-5, Mefford Depo., p. 56:6-22]. He further testified that he would have instructed anyone working on top of an air duct to "get your butt down" so as to protect their safety and to prevent damage to the air duct and other Tyson equipment. [*Id.* at pp. 74:11–75:3].

Mr. Felker worked on top of the duct the entire day until it loosened and fell to the ground in what he termed a "freak accident." [Doc. 44-2, ¶ 5]. Mr. Felker also fell to the ground, injuring his hip and head. [Doc. 44-4, M. Felker Depo., p. 59:13-20].

As a result of the accident, Mr. Felker filed the instant lawsuit, claiming that Tyson negligently failed to exercise ordinary care to warn invitees of, and protect them from, "dangers both known and reasonably foreseeable, including the improperly and insufficiently secured HVAC duct." [Doc. 1, ¶ 21]. Mr. Felker's wife, Amanda Burgess Felker, also seeks to recover for loss of consortium. [*Id.* at ¶¶ 27–29].

3

Tyson now moves for summary judgment, arguing that (1) it is a statutory employer immune from suit under the Georgia Workers' Compensation Act, Ga. Code Ann. § 34-9-1 *et seq.*; (2) it had no superior knowledge of the danger Mr. Felker faced; and (3) Mr. Felker failed to exercise ordinary care to prevent his injuries. *See generally* [Doc. 44-1]. For the reasons that follow, the Court disagrees with Tyson's first argument but agrees with the latter two arguments and therefore **GRANTS** Tyson's motion.

## DISCUSSION

### A. Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).

As to issues for which the non-movant would bear the burden of proof at trial, the movant may (1) simply point out an absence of evidence to support the non-moving party's case or (2) provide "affirmative evidence demonstrating that the [non-movant]

4

will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

### B. <u>Georgia Workers' Compensation Act – Statutory Employer</u>

Tyson first argues that it is immune from suit as a statutory employer under the Georgia Workers' Compensation Act, Ga. Code Ann. § 34-9-1 *et seq.* (the "Act"). Under the Act, "[a] principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer." Ga. Code Ann. § 34-9-8(a). Once the employee is or can be fully compensated by either one of the principles, intermediates, or subcontractors (referred to as "statutory employers"), the remaining statutory employers are immune from suit. *See* Ga. Code Ann. § 34-9-8(c) ("[T]he collection of full compensation from one employer shall bar recovery by the employee against any others, and the employee shall not collect a total compensation in

5

excess of the amount for which any of the contractors is liable."); *see also Manning v. Georgia Power Co.*, 314 S.E.2d 432, 433 (Ga. 1984) ("[T]he statutory employer doctrine permits liability for workers' compensation benefits to attach vicariously against someone other than an injured employee's employer. In return, the vicariously liable party is immune from tort liability for the injury suffered."); *Carr v. FedEx Ground Package Sys., Inc.*, 733 S.E.2d 1, 3 (Ga. Ct. App. 2012) (quoting *Maguire v. Dominion Dev. Corp.*, 527 S.E.2d 575, 577 (Ga. Ct. App. 1999)) ("It is a statutory employer's *potential* liability for workers' compensation benefits rather than actual liability that triggers the tort immunity.") (emphasis in original).

The field of statutory employers is "limited to those who contract to perform certain work, such as the furnishing of goods and services, *for another*, and then sublet in whole or part *such work*." *Yoho v. Ringier of Am., Inc.*, 434 S.E.2d 57, 58 (Ga. 1993) (quoting *Evans v. Hawkins*, 150 S.E.2d 324, 326 (Ga. Ct. App. 1966)) (emphasis added). There are two essential elements to this "contractor-subcontractor relationship": (1) the "existence of a contractual obligation on the part of the person to be held a contractor," and (2) the "subletting of *a part of that obligation* to the person to be held a subcontractor." *Id.* (quoting *Thorsheim v. State*, 469 P.2d 383, 389 (Alaska 1970)) (emphasis added). Thus, a property owner who is "merely in possession or control of the premises" is generally not a statutory employer, "except in the isolated situation where the [owner] also serves as a

contractor for yet another entity and hires another contractor to perform the work on the premises." *Id.* at 59 (quoting *Manning*, 314 S.E.2d at 434).

In this case, Tyson analogizes its position to the defendant in *Carr*, 733 S.E.2d 1. In *Carr*, the plaintiff's husband was injured while working as a truck driver for J. Wigg Trucking, Inc., an entity contracted to deliver packages on FedEx's behalf, at a FedEx facility. 733 S.E.2d at 3. In affirming the trial court's determination that FedEx was a statutory employer immune from suit, the Georgia Court of Appeals held that FedEx was simultaneously the owner of its facility and a contractor within the meaning of the Act, and J. Wigg was FedEx's subcontractor. In doing so, the Court of Appeals emphasized that "[t]he [tort immunity] statute embraces all who are in the venture with the hope of making a profit out of the *doing* of the work as distinguished from one out of the use or disposition of the completed project." *Id.* at 5 (quoting *Yoho*, 434 S.E.2d at 60) (emphasis in original). Thus, the court found that FedEx had contractual obligations to its clients to make deliveries on their behalf, and FedEx effectively "sublett[ed] [ ] *a part of that obligation*" to J. Wigg, its subcontractor. *Yoho*, *supra*; *id.* ("Because FedEx had a contractual obligation of performance to its customers, it was a 'contractor.' And it is clear that [J. Wigg], in its contract with FedEx, had agreed to perform on FedEx's behalf at least *a portion of the work required* for FedEx to fulfill its contractual delivery obligations to its customers . . . .") (emphasis added).

At the time of the incident giving rise to this action, Tyson was not in the same position as FedEx. Tyson argues that it had contractual obligations to provide prepackaged chicken products to grocers and that Mr. Felker's employer, ProLectric, was its subcontractor tasked with outfitting Tyson's premises with the electrical framework needed to make the prepackaged chicken products. Thus, Tyson argues, it was a contractor, and ProLectric was its subcontractor. However, in stark contrast to FedEx, which subletted its delivery obligations to another, Tyson did not sublet its obligation to make chicken products to anyone. Moreover, Tyson did not seek to make a profit from ProLectric's *doing of* the electrical work itself; rather, Tyson planned to make a profit out of *the use of* ProLectric's completed electrical work. *See Carr*, 434 S.E.2d at 5; *cf. Modlin v. Black & Decker Mfg. Co.*, 317 S.E.2d 255, 259 (Ga. Ct. App. 1984) (Birdsong, J., concurring) ("[T]he construction of a building is not a part of the conduct of a textile business," even when the textile business hires a company to construct a new plant. Therefore, the textile business is not a contractor in relation to a construction worker injured while constructing the new plant.). Accordingly, Tyson was not a contractor under the Act, and ProLectric was not Tyson's subcontractor. Tyson is therefore not entitled to tort immunity as Mr. Felker's statutory employer, and the Court **DENIES** Tyson's motion for summary judgment as to this ground.

### C. Tyson's Superior Knowledge

As an alternative to its statutory employer argument, Tyson contends that it lacked superior knowledge of the danger Mr. Felker faced and cannot be held liable under a premises liability theory. The Court agrees.

In their Complaint, Plaintiffs claim that Tyson violated Ga. Code Ann. § 51-3-1, which outlines the following duties an owner owes to an invitee:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

This duty requires an owner to "exercise [ ] ordinary care to protect the invitee from unreasonable risks of harm of which the premises owner has superior knowledge" and from "dangers foreseeable from the arrangement or use of the premises." *Campbell v. Savannah Motors, Inc.*, 716 S.E.2d 534, 535 (Ga. Ct. App. 2011) (quoting *Ferguson v. Premier Homes, Inc.*, 695 S.E.2d 56, 59 (Ga. Ct. App. 2010)). On the other hand, an owner is entitled to summary judgment if he "had no actual or constructive knowledge of the hazard or defect superior to that of the invitee," and he has "no duty to discover a defect which is not manifested until the incident causing injury." *Ferguson*, 695 S.E.2d 56, 59 (citing *Robinson v. Kroger Co.*, 493 S.E.2d 403 (Ga. 1997) and quoting *Ballard v. Southern Reg'l Med. Ctr.*, 453 S.E.2d 123, 125 (Ga. Ct. App. 1995)). But an owner is deemed to have constructive knowledge of a defect if "a reasonable inspection of the premises—one required in the

ordinary care—would have revealed the defect." *Id.* (citing *Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558 (1996)).

In response to Tyson's motion for summary judgment, Plaintiffs first argue that there is a genuine issue of fact as to whether Tyson had constructive knowledge of the danger Mr. Felker faced by working atop the air duct because Donald Mefford, Tyson's senior managing engineer, testified that he routinely walked around to inspect ProLectric's work and should have therefore been aware of Mr. Felker's danger. *See* [Doc. 44-5, Mefford Depo., p. 61:3-18]. However, this argument misidentifies the defect as being Mr. Felker's conduct rather than any defect in the actual premises, and the Court has already established that Tyson had no duty to discover a defect that only arose when the incident giving rise to the injury occurred. *See Ferguson*, *supra*. Therefore, this argument fails.

Second, Plaintiffs argue that the Tyson facility was defective because the air ducts only met the base industry standard, rather than exceeding that standard. However, Plaintiffs cite to no authority—and the Court can find none—supporting the proposition that a premise is defective simply *because* it meets the industry standard instead of being defective *despite* meeting that standard. Thus, this argument also fails.

Finally, Plaintiffs argue that Tyson created a hazard by "having duct work installed in a room where the electrical in the ceiling was not yet completed, forcing Plaintiff to use the duct work to complete his job." [Doc. 50, p. 7]. It seems Plaintiffs are

arguing that the premises were defective because they were not entirely free of duct work, which would have allowed Mr. Felker unobstructed access to the ceiling on which he was tasked with running conduit. Yet, there is no evidence that Tyson had *superior* knowledge of such a "defect." Indeed, Mr. Felker testified that he saw the amount of space between the ceiling and the air duct (approximately a foot and a half of space), but he chose to climb a ladder to the top of a machine and then stepped off of the machine in order to "finagle" his way into the space anyway. [Doc. 44-4, M. Felker Depo., pp. 30:21–34:15, 36:13–38:6]. Consequently, Tyson and Mr. Felker had at least equal knowledge of the ceiling's limited accessibility by virtue of it being in plain sight and Mr. Felker's testimony that he actually saw it. Therefore, even though Tyson was not Mr. Felker's statutory employer, Tyson is still entitled to summary judgment.[3]

### D. Mrs. Felker's Loss of Consortium Claim

Given the Court's holding that Mr. Felker's personal injury claim against Tyson fails, the Court also finds that Mrs. Felker's derivative claim for loss of consortium likewise fails. *See White v. Hubbard*, 416 S.E.2d 568, 570 (Ga. Ct. App. 1992) ("Appellee's

---

[3] Tyson also argues that it is entitled to summary judgment because Mr. Felker failed to exercise ordinary care for his own safety while running conduit on top of the air duct. *See, e.g.*, *Roberts v. Carter*, 448 S.E.2d 239, 240 (Ga. Ct. App. 1994) (quoting *Meriwether Mem'l Hosp. Auth. v. Gresham*, 414 S.E.2d 694, 695 (Ga. Ct. App. 1992)) ("[A] person cannot undertake to do what obviously is a dangerous thing, even if he is directed by another without assuming the risks incident thereto and without himself being guilty of such lack of due care for his own safety as to bar him from recovery."). At first blush, this argument holds weight given the evidence showing that Mr. Felker did not exercise reasonable care to determine whether his harness was short enough to catch him in the event of a fall. But the Court need not consider whether Mr. Felker exercised due care since it has already determined that there was no defect on Tyson's premises of which Tyson had superior knowledge.

status as the injured person's wife is the basis for her claims for loss of consortium . . . . Her claim is derivative and can fare no better than her husband's claims.").

## **CONCLUSION**

For the reasons stated above, the Court **GRANTS** Tyson's Motion for Summary Judgment [Doc. 44] and **DISMISSES** Plaintiffs' claims.

**SO ORDERED**, this 31st day of October, 2018.

                                              **S/ Tilman E. Self, III**
                                              **TILMAN E. SELF, III, JUDGE**
                                              **UNITED STATES DISTRICT COURT**